```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                        IN ADMIRALTY
```

GREAT LAKES REINSURANCE
(UK) PLC,

      Plaintiff,

                            CASE NO. 12-CV-2923-VMC-TGW

vs.

KAN-DO, INC.,

      Defendant

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

Although the facts which demonstrate that Plaintiff is entitled to summary judgment are recounted in greater detail in the Statement of Material Facts not in Dispute, this is actually quite a simple case. The Defendant Kan-Do, Inc. was the owner of a boat which was insured under a policy of marine insurance issued by the Plaintiff Great Lakes Reinsurance (UK) plc. The said policy of marine insurance provided marine Hull & Machinery coverage for a boat owned by the said Defendant, in the agreed value sum of $77,622.00.

On or about November 5, 2012, the vessel owned by the Defendant and insured by the Plaintiff quite simply sank at its dock, in fair weather and calm seas, for reasons which

for the purposes of the instant motion for summary judgment are undisputed. Nothing struck the vessel; Nothing damaged the vessel; There was no collision with a fixed or a floating object; There was no act of negligence by the marina or its personnel. The vessel sank because seawater entered through a worn port-side shaft gland and the vessel eventually filled up with water and sank when the bilge pump system failed to operate due to a simple blown fuse.

LEGAL ARGUMENT

I.

SUMMARY JUDGMENT IS PROPER HERE SINCE<br>NO MATERIAL FACTS REMAIN INDISPUTE

Summary judgment is appropriate where there is no genuine issue or dispute remaining as to the material facts in a case. *See, Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In addition, the federal maritime law recognizes the particularly appropriate nature of summary judgment in resolving marine insurance coverage questions. *See, e.g., The Home Insurance Company v. Vernon Holdings*, 1995 A.M.C. 369 (S.D. Fla. 1994); *Port Lynch, Inc. v. New England Int'l Assur. Of America*, 754 F.Supp. 816 (W.D. Wash. 1991).

*See also, Talat Enterprises, Inc. v. Aetna Life & Cas. Co.*, 952 F.Supp. 773 (M.D. Fla. 1996) in which the court stated "[T]he interpretation of an insurance contract

2

question is a question of law which may be determined on summary judgment." *Id.*, at 776.

An issue of law is said to be "material" if it is something that might affect the outcome of the suit under the governing law. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A material fact is understood to be "genuine" only "if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.,* at 261, n. 2.

In opposing the motion for summary judgment filed by the Plaintiff herein, it is incumbent upon the Defendant to submit competent evidence which would be sufficient to satisfy that exact same standard of proof that would be required of him at the trial which is scheduled for early March of 2007. *See, Anderson v. Liberty Lobby, Inc.*, *id.* It is not sufficient for the DEfendant herein to merely contend to this Court that some issues are unproven, or that unimportant differences or immaterial issues might arguably remain still unresolved. *Id.*

*See also, Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997).

As is clear from the Statement of Material Facts submitted in support of the Plaintiff's instant motion for summary judgment, there can be no dispute remaining with

3

respect to the critical issue of what caused the sinking of the insured vessel on or about July 26, 2005. The investigation and findings of the Plaintiff's marine surveyor are unrebutted, and indeed as is clear from his own e-mailed statement dated August 15, 2005, the Defendant himself must admit that the cause of the loss was the simple running down of the batteries that power the vessel's bilge pumps due to overuse.

No factual dispute therefore remains for submission to a non-jury trial. Under the applicable caselaw, to be reviewed below, the Plaintiff is entitled to this Court's award of summary judgment.

## II.

### THERE CAN BE NO COVERAGE BECAUSE THERE HAS BEEN NO ACCIDENT

The record before the Court establishes that the Plaintiff's policy of marine insurance cannot afford coverage for the claim presented by this Defendant, for the simple reason that absolutely nothing of an accidental nature has been shown to have taken place.

The applicable caselaw illustrates quite clearly that this Court must accord the full legal effect of the policy language in order to determine that no coverage can exist for a sinking where rather than any "accident," the vessel

4

sank due simply to a blown fuse which prevented the bilge system from being able to deal with intrusion of seawater through a worn and deteriorated port shaft gland.

The term "accident" has always been held to mean that an event is unexpected and unintended, *see, e.g.,* Ostrager & Newman, *Handbook on Insurance Coverage Disputes* (9th ed. 1998), stating "[a]ccident is thus synonymous with fortuitous." *Id.,* at p. 378. *Black's Law Dictionary*, in turn, defines fortuitous as follows:

> Happening by chance or accident. Occurring unexpectedly, or without known cause. Accidental; undersigned; adventitious. Resulting from unavoidable physical causes.

*Id.,* at p. 589 (5th ed. 1979).

Even where, as in the instant matter, the policy involved is one that would be termed an "all risk" policy, the threshold requirement of loss due to some "fortuity" remains. *Continental Insurance Co. v. Lithotech Sales,* 2001 A.M.C. 1046 (D. N.J. 2001), with the burden of proof remaining squarely on the shoulders of the insured even where the marine insurer has brought a declaratory judgment action under Fed. R. Civ. P. 9(h) and is the plaintiff in the coverage litigation. *Id.*

5

In the recent case of *Miller Marine Services, Inc. v. Travelers Prop. & Cas. Insurance Co.*, 2005 A.M.C. 2601 (E.D.N.Y. 2005) the court addressed this same issue from the perspective of both "fortuitousness" and "accidental" and also from the perspective of proximate cause. The court ruled that there could be no coverage where seawater intrusion caused a vessel sitting at its pier to sink, since there was no evidence of anything of an accidental nature. In addition, the court analyzed the facts from a proximate cause perspective and held that there was no evidence that anything covered by the policy of marine insurance could be deemed to have taken place.

The recent case of *Great Lakes Reinsurance (UK) plc v. Soveral* 2007 A.M.C. 672 (S.D. Fla. 2007) illustrates how this Court should resolve the issue of coverage in the instant matter. Great Lakes Re brought a declaratory judgment action in federal district court in a case where the vessel sank at its mooring located behind the insured's weekend home in the Bahamas. The vessel had been left uncovered so that rainwater accumulated and eventually sank the vessel when the batteries that powered the bilge pumps simply gave out, and a summary judgment was awarded to Great Lakes Re:

6

> The insurance policy provides "coverage for accidental physical loss of, or damage to" the [the vessel]. The policy specifically excludes coverage for "losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mold animal and marine life." The contract does not define the term accident. The issue in this case is whether rain and the dead batteries constitute and accident. ***This Court holds that it does not.*** (Emphasis added).

*Id.,* at, 674.

> [T]his Court does not find that water entering an uncovered vessel during rainy season is fortuitous.

*Id.,* at 676.

In precisely the same manner, and culminating in what should be precisely the same outcome, it is manifest that absolutely nothing of an accidental nature occurred at the Port Tarpon Marina on November 5, 2012 and that Plaintiff's policy of marine insurance cannot afford coverage for the vessel having simply sunk. The weather was clear and the "seas" were calm. There was no impact nor any act of fault or neglect. All that occurred was that a fuse failed, as must be the case inevitably in the course of time.

In the case before the bar of this Court, whether analyzed in terms of "accidental" or proximate cause, it remains manifest that Plaintiff's policy cannot be held to afford coverage for the sinking at its dock of the

7

Defendant's vessel. Nothing happened that any policy of insurance, marine or otherwise for that matter, would afford coverage for. Quite simply, seawater flowed into the vessel's bilge spaces and the pumps failed to operate. The vessel then became filled with water and it sank.

The Material Facts Not in Dispute illustrate a situation for which there is simply no coverage, because nothing of an accidental nature can be said to have occurred. Plaintiff is therefore entitled to this Court's award of summary judgment.

III.

ANY COVERAGE UNDER THE POLICY OF MARINE
INSURANCE IS VOID BECAUSE OF THE DEFENDANT'S
BREACH OF THE EXPRESS WARRANTY OF SEAWORTHINESS

The undisputed facts as set forth in the Defendant's own expert submission demonstrates that the vessel was rendered unseaworthy and therefore in clear breach of the policy's express warranty on that subject. The policy is therefore void, as the caselaw establishes that where a vessel simply sinks at its mooring because some condition allows and/or fails to deal with something as quotidian as the slow intrusion of seawater from the surrounding environment, that vessel is unseaworthy and the policy of void.

*See, Underwriters at Lloyd's v. Labarca,* 2001 A.M.C. 2409 (1st Cir. 2001), where the vessel sank at its pier because two (2) uncapped water cooling hoses were inadvertently left open, breaching the policy's express warranty that the vessel would be "maintained in seaworthy condition at all times."

### *"Maintained in seaworthy condition at all times."*

That is the exact same wording that appears in the Plaintiff's policy and it is respectfully submitted that it must be applied in exactly the same manner.

One of the most well established and deeply entrenched principles of the federal admiralty law is that "[a] warranty of seaworthiness by the owner is implied in every hull insurance policy unless expressly waived." *Ins. Co. of N. America v. Bd. Of Comm. Of Port of New Orleans,* 1985 A.M.C. 1460, at 1465 (5th Cir. 1984). A breach of this warranty results in "denial of liability for loss or damage caused proximately by such unseaworthiness. *Id.,*

Even more critically, when a vessel sinks like this one did, at its mooring in calm waters, a legal presumption arises that the vessel was unseaworthy and the burden is then placed squarely on the insured to produce evidence to the contrary. *J&A Fleeting v. Fireman's Fund McGee,* 2006 A.M.C. 535 (E.D. Ky. 2006); *Couch on Insurance* (3rd ed.)

9

sec. 99:17 *et seq*. The Defendant's vessel quite simply sank at its mooring at the marina when the bilge pumps failed to deal with the intrusion of seawater because of a blown fuse.

The Defendant cannot avoid summary judgment for its breach of the onerous burden imposed by the warranty that the vessel is seaworthy "at all times" by asserting that it was unaware of the situation, or that it is without "fault."

> Two further points merit comment. First, a finding of unseaworthiness is not affected by whether the owner was or was not negligent or at fault. *See Trawler Racer*, 362 U.S. at 548, 1960 AMC at 1511 (reaffirming that "the duty to provide a seaworthy ship depends not at all upon the negligence of the ship owner or his agents") *Ferrara*, 1997 AMC at 948-9, 99 F.3d at 453... The fact that the air-conditioning system could have been run safely had Labarca thought to seal the disconnected hoses does not change the fact that operating the air conditioning system with the unsealed hosaes created an unseaworthy condition, as a result of which the [vessel] sank. (Citation omitted). Second, when a vessel sinks in calm waters a presumption of unseaworthiness arises. *See Pace v. Ins. Co. of North America*, 838 F.2d 572, 577, 1993 AMC 2695 (1st Cir. 1988). It is for the insured to rebut the presumption By producing competent evidence from which a Fact6finder could determine thqat the vessel sank for some reason other than the alleged unseaworthy condition. *See Ins. Co. of North America v. Lanasa Shrimp Co.,* 1984 AMC 2915, 2917, 726 F.2d 688 (11th Cir. 1984). Labraca did not provide evidence capable of rebutting this presumption.

*Underwriters at Lloyd's v. Labarca,* 2001 A.M.C. at *2413.*

10

As already noted, the Plaintiff's express warranty requires that the Defendant's vessel be maintained in seaworthy condition "at all times" just as was the case in *Labarca*. The undisputed evidence submitted in support of summary judgment comes directly from the Defendant's own expert, and it illustrates that the vessel was rendered unseaworthy by the failure of the fuse, a failure which led directly to the vessel then sinking when its bilge pumps could not handle the intrusion of sweater via the packing gland. Summary judgment is the appropriate relief.

IV.

COVERAGE IS EXCLUDED FOR ANY DAMAGES
INVOLVING THE VESSEL'S ENGINES, ETC.

The Plaintiff is at the very least entitled to an award of partial summary judgment holding that there can be no coverage and hence no damages for any aspect of the Defendant's claim which might involve or relate to the vessel's engines, mechanical and electrical parts because of the clear and unambiguous exclusion in the policy.

Florida state law on the subject of such an exclusion and its interpretation is utterly clear. A Florida court, whether federal or state, "may not rewrite contracts or add meaning to create an ambiguity." *Dahl-Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1982).

11

Neither may the Court indulge in "strained, forced, or unrealistic" interpretations of what would otherwise be clear and unambiguous verbiage requiring a logical outcome. *Vencor Hosp. v. Blue Cross Blue3 Shield*, 284 F.3d 1174, 1181 (11th Cir. 2002).

Here, the Plaintiff's policy cannot afford any coverage for any repair costs or damages sustained by the vessel's engines, its mechanical and/or its electrical parts.

                GOLDMAN & HELLMAN
                Attorneys for Plaintiff
                800 S.E. 3rd Avenue
                4th Floor
                Fort Lauderdale, FL 33316
                Tel (954) 356-0460

                By: /s/ Steven E. Goldman
                    STEVEN E. GOLDMAN, ESQ.
                    FLA. BAR NO. 345210

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 28th day of February, 2014, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:

Munch & Munch, P.A.
600 S. Magnolia Avenue
Suite 325
Tampa, FL 33606


                      GOLDMAN & HELLMAN
                      Attorneys for Plaintiff
                      800 S.E. 3rd Avenue
                      4th Floor
                      Fort Lauderdale, FL 33316
                      Tel (954) 356-0460


        By:  /s/ Steven E. Goldman
             STEVEN E. GOLDMAN, ESQ.
             FLA. BAR NO. 345210