UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK)PLC,

     Plaintiff,

                                CASE NO. 12-CV-2923-VMC-TGW

vs.

KAN-DO, INC.,

     Defendant.

_____/

### PLAINTIFF'S STATEMENT OF MATERIAL
### FACTS NOT IN DISPUTE IN SUPPORT
### OF MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and ___ of the Local Rules of the United States District Court for the Middle District of Florida, files this its Statement of Material Facts Not in Dispute, submitted in support of Plaintiff's motion for summary judgment, and further thereto would respectfully state as follows:

1.   The Plaintiff in the instant action is a UK-based marine insurance company which issued a policy affording Hull & Machinery coverage on a vessel which for insurance purposes was described as a 1987 Bluewater 51 ft Coastal Cruiser fiberglass motor yacht powered by twin 270 hp Crusader gasoline engines. The said vessel was owned by the Defendant Kan-Do, Inc. and was insured for an agreed value of $77,622.00 (*see*, Cover Note attached to and made a

part of Plaintiff's Policy No. OSPYP/134083, attached hereto as Exhibit "A" in support of Plaintiff's motion for summary judgment).

2.   The instant action is one in which the Plaintiff has commenced a declaratory judgment action, invoking this Court's admiralty jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure, asking this Court to rule that the policy of marine insurance affords no coverage for an incident which is alleged to have occurred on or about November 5, 2012. It was as a result of this incident that the Defendant filed a claim with the Plaintiff contending that the insured vessel was a constructive total loss and demanding payment of an amount equal to the full insured value of the vessel.

3.   Although Plaintiff's Complaint for Declaratory Judgment asserts four (4) separate Causes of Action, for purposes of the instant Motion for Summary Judgment, relief is being sought on the basis of the FIRST CAUSE OF ACTION and the FOURTH CAUSE OF ACTION asserted in the said Complaint.

4.   Plaintiff's Motion for Summary Judgment brought before the bar of this Court seeks relief on the basis of the FIRST CAUSE OF ACTION, in which it is Plaintiff's contention that its policy of marine insurance affords no coverage for the incident which occurred on November 5, 2012 due to the fact that coverage would

exist only where the facts demonstrate that there occurred "an accidental physical loss."

5.    Plaintiff's Motion for Summary Judgment brought before the bar of this Court seeks relief on the basis of the FOURTH CAUSE OF ACTION, in which it is Plaintiff's contention that its policy of marine insurance contains and clear and unambiguous exclusion for that entire aspect of the loss or damage to the "engines, mechanical and electrical parts" of the insured vessel "unless caused by an accidental external event..." as further defined at the said exclusion.

6.    The undisputed material facts which have been adduced in the course of the Plaintiff's post-incident investigation, and in the course of the discovery conducted in the instant litigation, establish beyond cavil or rational dispute that there was no such "accidental physical loss" and no "accidental external event."

7.    The undisputed material facts submitted in support of summary judgment will come directly from the Defendant's own expert report, and will demonstrate that the Plaintiff is entitled to an award of complete summary judgment.

8.    The material facts not in dispute are relatively few.

9.    Kan-Do, Inc. is at present an inactive Florida corporation the president of which is Ms. Laura Lyons (Depo. of Lyons, p. 13). The Defendant was incorporated in 1990, just prior

to the purchase of the vessel which is the subject of this litigation back in 1987. (Depo. of Lyons, p. 17).

10.  At the time of the November 5, 2012 incident, as well as at all other times relevant hereto, the insured vessel was kept at the Port Tarpon Marina located in Tarpon Springs, Florida (Depo. of Carlevatti, p. 5). At all times relevant hereto, the insured vessel was kept at a particular slip at the marina, either C-5 or perhaps C-6 (Depo. of Carlevatti, p. 17) and the vessel was located at its "home slip" on the date of the incident (*Id.*).

11.  The Defendant paid Port Tarpon Marina a monthly rental for the slip of $428.00 (Depo. of Lyons, p. 27) Defendant also paid a monthly utility bill for the electric power utilized by the vessel while it was at secured at its slip (*Id.*, p. 25).

12.  On November 5, 2012, somebody from the Tarpon Springs Marina telephoned the office of Defendant's president, Ms. Laura Lyons, and advised that the vessel was sinking at its slip (Depo. of Lyons, pp. 35-36).

13.  Following receipt of notice of the incident and the formal submission of the Defendant's claim, Plaintiff appointed the marine surveying and adjusting firm of wager & Associates in order to oversee the investigation into the facts and circumstances surrounding the vessel's November 5, 2012 sinking at its slip.

4

Attached hereto as Exhibit "B" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the initial letter dated November 6, 2012 sent to the Defendant by Wager & Associates apprising the Defendant of the assignment and requesting the assistance and cooperation referenced therein.

14.  Per Exhibit "B," a marine surveyor named Chris Mills was actually appointed in order to survey the damage to the vessel, and the report prepared by Capt. Mills is attached hereto as Exhibit "C" in support of Plaintiff's Motion for Summary Judgment.

15.  To summarize the findings of Capt. Mills, he noted that the insured vessel had sunk at its slip; and noted that witnesses described water exiting the vessel "from the port shaft gland area." (Ex. "C.")

16.  Capt. Mills observed no damage to the vessel's hull; All through-hull fittings and seacocks were inspected and no damage was observed. The vessel had not become trapped beneath the pier as a result of rising tide. No damage or alignment issues were observed with respect to the vessel's running gear, props and/or rudders. (Ex. "C.")

17.  Capt. Mills opined that the "cause of the loss is consistent with water ingress through the port shaft gland. The gland had been fully tightened, which is consistent with worn packing. The period of dry-storage, in the yard, may have exacerbated this condition. The noted port list to the vessel… and

5

the apparent lack of bilge pumping or cycling, is consistent with discharged batteries..." (Ex. "C.")

18.    There is absolutely no mention of any accident or cause for the insured vessel to have sunk at its slip, other than wear and tear, together with the manifest failure of the vessel's bilge pumps to then function in order to de-water the vessel.

19.    The Defendant has also engaged a marine surveyor in order to inspect the vessel and in order to arrive at a cause for the sinking at the pier. Attached hereto as Exhibit "D" in support of Plaintiff's motion for summary judgment is a true and correct copy of the expert's report dated October 8, 2013 prepared by Daniel J. Avoures & Associates, Inc., Naval Architects & Consultants.

20.    For purposes of the instant summary judgment motion, the undersigned counsel for the Plaintiff will concede and in fact will gladly **_stipulate_** to everything asserted in the report prepared by Defendant's own expert witness.

21.    As the Court will note, Capt. Avoures twice tested the vessel's main bilge pump (April 23, 2013 and again on May 3, 2013) and observed that it did not operate. He found that the insured vessel's main bilge pump had apparently failed to operate.

21.    As the Court will note, it is Capt. Avoures' conclusion that the seawater entered the insured vessel through the port shaft

6

stuffing box, and then accumulated in the vessel's bilge areas. "The failure of the of the main bilge pump to dewater the vessel because of a blown fuse allowed water to accumulate to the point that a bilge discharge through hull fitting submerged and allowed rapid incursion of water." (Ex. "D.").

22.   In other words, the vessel's main bilge pump quite simply failed to work because of a blown fuse, and so when seawater entered the vessel through the port shaft gland and was not then discharged, the vessel heeled over to port and water flooded in.

23.   In a letter dated December 21, 2012, the Plaintiff's UK-based Marine Underwriting & Claims Managers at Osprey Special Risks Ltd. communicated a denial letter to the Defendant, setting forth the reasons therefore and advising further of Plaintiff's having availed itself of the opportunity to seek this Court's declaratory judgment on the coverage issues. A true and correct copy of the referenced denial letter is attached hereto as Exhibit "E" in support of Plaintiff's motion for summary judgment.

24.   The vessel was never repaired, but was in fact sold by the Defendant for $7,500.00 (Depo. of Lyons, p. 16).

25.   As noted in a somewhat abridged version the December 21, 2012 denial letter, Plaintiff's Policy No. OSPYP/134083 states, in pertinent part:

2.    <u>INSURING AGREEMENT</u>

This is a legally binding insurance contract
between you and us, incorporating in full the
application signed by you. We will provide the
insurance coverage described in this insuring
agreement, in return for payment to us of the
premium due and compliance by covered persons
with the provisions, conditions and warranties
of this insuring agreement.

3.    <u>Coverage A, Hull, Machinery, Equipment and Dinghy</u>

If a sum insured is shown for Section "A" of
the insuring agreement declarations page, we
provide coverage for ***accidental physical loss***
(emphasis added) of, or damage to a scheduled
vessel which occurs during the period of this
insuring agreement...

                    * * * * * *

9.    <u>General Conditions & Warranties</u>

                    * * * * * *

        b)    It is warranted that the scheduled vessel
              is seaworthy at all times during the duration
              of this insuring agreement. Breach of this
              warranty will void this insuring agreement
              from its inception.

                    * * * * * *

            <u>Exclusions to Coverage A</u>

Unless specifically agreed by us in writing and
additional premium charged the following losses and/or
damages 9whether incurred directly or indirectly) are
not covered by this insuring agreement:

                    * * * * * *

8

b)   losses due to wear and tear, gradual deter-
     ioration, lack of maintenance, weathering,
     insects, mould, animal and marine life.

                    ******

r)   Damage to the Scheduled Vessel's engines,
     mechanical and electrical parts, unless caused
     by an accidental external event such as
     collision, impact with a fixed or floating
     object, grounding, stranding, ingestion of
     foreign object, lightning strike or fire.

Dated:    February 28, 2014
          Fort Lauderdale, Florida

                    GOLDMAN & HELLMAN
                    Attorneys for Plaintiff
                    800 S.E. 3rd Avenue
                    4th Floor
                    Fort Lauderdale, Florida 33316
                    (954)356-0460

                    By:   /s/ Steven E. Goldman
                          STEVEN E. GOLDMAN, ESQ.
                          FLA. BAR NO. 345210

9

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY  that on this 28th day of February, 2014, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:.

Munch & Munch, P.A.
600 S. Magnolia Avenue
Suite 325
Tampa, FL 33606

GOLDMAN & HELLMAN
Attorneys for Plaintiff
800 S.E. 3rd Avenue
4th Floor
Fort Lauderdale, Florida 33316
(954)356-0460

By:  /s/ Steven E. Goldman
     STEVEN E. GOLDMAN, ESQ.
     FLA. BAR NO. 345210