UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK)PLC,

      Plaintiff,

                                   CASE NO.  12-CV- 02923-VMC-TGW

vs.

KAN-DO, INC.,

      Defendant.

_____/

## PLAINTIFF'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys, and for Reply in Support of Summary Judgment would state as follows:

It is respectfully submitted that the Court's review of Defendant's submission in opposition to summary judgment must demonstrate beyond cavil or dispute that Plaintiff is in point of fact clearly entitled to summary judgment. The record now establishes that there has been no "accident" which can be recognized as the proximate cause of the vessel sinking at its mooring in clear and calm weather; The record now establishes that the slow, accumulating intrusion of seawater into the vessel was the proximate cause of the sinking, and that for whatever reason, the vessel's bilge pumps quite simply failed to deal with what Defendant readily admits was a virtual trickle of seawater; The record now establishes that Plaintiff's policy clearly and unambiguously excludes any and all coverage for the claim asserted by the Defendant to the extent that the claim involves damage to the insured's vessel's engines, etc.

1

As noted in the pending motion, Plaintiff has gladly stipulated to the version of events as asserted by the Defendant's marine surveyor. Regardless of its source or the reasons, seawater trickled into the vessel over time, slowly, and the bilge pumps failed to remove that slow trickle. It is respectfully submitted that regardless of whether the bilge pumps failed because their internal batteries wore out, or because a fuse or other such the shore-side connection shorted out, recent caselaw on the federal admiralty law doctrine which is termed the "fortuity rule" shows that summary judgment is proper here. *See, Youell v. Exxon Corp.*, 1995 A.M.C. 1447 (2d Cir. 1995)

In the case of *Class Action of S. Fla. v. Nat'l Union Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 13096 (S.D. Fla. 2013), again a vessel sank while just sitting peacefully at its mooring. The insured sought to avoid summary judgment by asserting that a leak in the vessel's salt water circulation system was the cause of the sinking, and that this could somehow be viewed as a "fortuity." The Court in Miami rejected this argument because "[s]imply put, a totally unexplained mechanical failure of the vessel's circulation system is not a fortuitous cause of loss."

*See also, Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 58057, 2013 WL 866211 (S.D. Fla. 2013). The cases on the "fortuity rule" show that just because a policy of marine insurance is an "all risk" policy, it will not cover any particular loss unless there has been an accident. "All risk policies are not "all loss" policies." *Standard Structural Steel Corp. v. Bethlehem Steel Corp.*, 597 F.Supp. 164, at 191 (D. Conn. 1984).

Just as in the case of *Great Lakes Re v. Soveral*, 2007 A.M.C. 672 (S.D. Fla. 2007) cited in Plaintiff's original Memorandum of Law, intrusion of water (rain in the *Soveral* case, seawater here)

sank a vessel tied up at its dock. Just as Defendant argues here, there was no evidence of any wear and tear or other immediate cause aside from the alleged fact that water gets into vessels ordinarily and without any particular fault.  The bilge pumps failed to rid the vessel of the accumulated water and the vessel sank. This was held to not be an "accident." In the instant litigation, regardless of whether the bilge pumps failed because of a blown fuse at the shore-side connection, or because the vessel's own internal batteries were inoperable, it must be self-evident that there was no "accident" as the caselaw now illustrate that critical term must be applied by this Court. In *Soveral* and in *Kan-Do*, a vessel was left at its mooring and a boat sank because water entered the vessel and the bilge pumps did not do what they are supposed to do. In *Soveral*, Judge Ryskamp noted that "batteries do not last forever." 2007 A.M.C, at 676. Neither do fuses, and when either batteries wear out or a fuse blows, both ***inevitabilities*** rather than ***fortuities***, and a vessel sinks without any external cause other than the utterly quotidian reality that water foreseeably enters in very modest quantities which would otherwise be innocuous, application of the federal admiralty law "fortuity rule" means that there can be no coverage for such an event.

Additionally, in erroneously asserting that evidence of a blown shore-side fuse can turn this simple sinking into an "accident," Defendant runs afoul of another well entrenched rule of the federal admiralty law involving the issue of proximate cause. "Proximate cause is applied more strictly in marine insurance cases than in negligence cases." *Continental Ins. Co. v. Lone Eagle Shipping*, 952 F. Supp. 1046, 1997 A.M.C. 1099 (S.D.N.Y. 1997) and "[c]ourts are to look at the 'predominant or determining' or the 'real efficient' cause of the loss. (Citation omitted). Proximate cause is not determined by resort to 'but for' causation." 952 F.Supp., at 1061.

The Supreme Court ruling in the *Lanasa Fruit* case cited in *Lone Eagle Shipping*, *supra*, together with the legal treatises also cited therein, make it abundantly clear that the proximate cause of this Defendant's vessel sinking at its mooring in a marina cannot be said to have been a blown fuse. When two or more causes combine to cause the loss, one being covered and the other not covered, the loss is not insured unless the covered loss is the predominant and efficient cause of the loss. *See, Standard Oil Co. of N.J. v. United States* , 340 U.S. 54 (1950).

The proximate cause here, as a matter of law, must be understood to have been the simple fact that seawater was allowed to leak into the vessel over the course of time, in sufficient amounts and over a sufficient period of time, to finally cause the vessel to sink.

Turning next to the seaworthiness issue, Defendant's argument asserts that it took good care of the insured vessel, and asks this Court to turn a blind to the absolutely critical fact that such care makes absolutely no difference under the express terms of the warranty as stated in Plaintiff's policy. Plaintiff's warranty of seaworthiness does not require that the vessel be seaworthy at the inception of coverage, not does it state that the vessel owner must exercise due diligence to maintain the vessel in seaworthy condition during the term of the policy. Rather, just like the warranty which was at issue in the *Labarca* case cited in Plaintiff's Memorandum of Law, Plaintiff's warranty requires that the insured vessel be in seaworthy condition at all times. As the court noted in the *Labarca* case, "a finding of unseaworthiness is not affected by whether the owner was or was not negligent or at fault." *Labarca,* 2001 A.M.C. at 2413.

4

This vessel was taking on water and its bilge pumps failed to function, both under internal or battery power and also under shore-side power. Such a situation is the very definition of unseaworthiness and puts this Defendant in manifest breach of the terms of the warranty in Plaintiff's policy of marine insurance. *See, Axis Reinsurance Co. v. Henley,* 2009 U.S. Dist. LEXIS 98718, 2009 WL 3416248 (N.D. Fla. 2009), holding that a vessel is unseaworthy and in breach of the express policy warranty where its bilge pumps are missing or fail to function.

Finally, Defendant is unable to muster any effective argument against summary judgment based on the clear and unambiguous exclusion in the policy for damage to the vessel's "engines, mechanical and electrical parts" other than to make the unfounded assertion of "inconsistency." To the extent that this loss and the damage sustained as a result of the vessel sinking at its mooring involves the vessel's engines, mechanical and electrical parts, Plaintiff is entitled to have this Court rule that coverage is excluded.

Where the language in a policy of marine insurance is clear and unambiguous, that contract provision must be accorded its full effect and meaning, and the Court must avoid and reject ill-founded invitations such as made by Defendant which seek to impute or to create ambiguity where in point of fact no such thing exists. *See, Certain Underwriters at Lloyd's v. Capri of pal Beach, Inc.*, 128 F.3d 732 (11th Cir. 1997).

As noted by the Second Circuit in the case of *Commercial Union Ins. Co. v. Flagship Marine Services*, 190 F.3d 26, (2d Cir. 1999), non-warranty provisions and exclusions which limit the coverage otherwise afforded under a policy of marine insurance "…define the coverage limits [by] clarifying and defining the types of events an insurer does not intend to cover." *Id.*, at 31. In the instant matter, the marine underwriters who agreed to issue Plaintiff's Policy No. OSPYP/134083

were quite simply unwilling to have that coverage extend to incident involving damage to the insured's vessel's engines, mechanical and electrical parts unless that damage was caused by "an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding,, ingestion of foreign object, lightning strike or fire." The exclusion in Plaintiff's policy makes it patently obvious that GLR will not cover damage to the vessel's engines, etc., where all that has occurred is that water leaked into the engine spaces and was not dealt with by the bilge pumps. There is coverage for damage to engines, etc. only where the damage is the result of by "an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding,, ingestion of foreign object, lightning strike or fire."

The vast preponderance of the damage sustained by the Defendant's vessel, insured for $77,622.00 was to its "engines, mechanical and electrical parts" by virtue of the self-evident fact that these are uniquely subject to injury due to intrusion of seawater. Regardless of every other argument in this litigation, it must be manifest therefore that the clear and unambiguous provision in the policy entitles Plaintiff to summary judgment for all aspects of the claim relating to engines, etc.

Dated:          March 24, 2014
                Fort Lauderdale, Florida

                         GOLDMAN & HELLMAN
                         Attorneys for Plaintiff
                         800 S.E. 3rd Avenue, 4th Floor
                         Fort Lauderdale, Florida 33316
                         Tel (954) 356-0460
                         Fax (954) 832-0878

                         By:    /s/ Steven E. Goldman
                                STEVEN E. GOLDMAN, ESQ.
                                FLA. BAR NO. 345210

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 24th day of March, 2014, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing to the following counsel of record:

Munch & Munch, P.A.
600 S. Magnolia Avenue
Suite 325
Tampa, FL 33606

GOLDMAN & HELLMAN
Attorneys for Plaintiff
800 S.E. 3rd Avenue, 4th Floor
Fort Lauderdale, Florida 33316
Tel (954) 356-0460
Fax (954) 832-0878

By: ___/s/ Steven E. Goldman_____
         STEVEN E. GOLDMAN, ESQ.
         FLA. BAR NO. 345210