UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREAT LAKES REINSURANCE (UK) PLC,

              Plaintiff,

                              Case No. 8:12-cv-2923-T-33TGW

v.

KAN-DO, INC.,

              Defendant.

_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Plaintiff Great Lakes Reinsurance (UK) PLC's Motion for Summary Judgment (Doc. # 27), Memorandum in Support (Doc. # 32), and Statement of Undisputed Facts (Doc. # 33) filed on February 28, 2014. Defendant Kan-Do, Inc. filed a Response in Opposition to the Motion (Doc. # 42) on March 14, 2014. Great Lakes filed its Reply (Doc. # 43) on March 24, 2014.

After considering the record and the parties' submissions, the Court denies the Motion for Summary Judgment.

**I.   <u>Background</u>**

The vessel Kan-Do was a 51-foot Bluewater Motor Yacht that was built in 1989. (Doc. # 33-1 at 2). The Kan-Do was

insured by Great Lakes for $77,622.00. (Id.). Before coverage was first underwritten in 2009, the Kan-Do was surveyed by marine surveyor William Schiffner, who issued a "preinsurance survey." (Schiffner Dep. Doc. # 38-1 at 6). Schiffner explained that he completed the inspection of the vessel "for the benefit of insurance underwriters. . . . And you're looking for various deficiencies that might affect the risk as it is presented to the underwriters." (Id. at 8). Presumably, the Kan-Do passed the inspection, because Great Lakes insured the Kan-Do.

However, on November 15, 2012, the Kan-Do sank at Port of Tarpon Marina, in Tarpon Springs, Florida, in calm waters. (Carlevatti Dep. Doc. # 35 at 5-11). An expert report filed by Kan-Do, Inc., to which Great Lakes stipulates, indicates that the Kan-Do sank due to water intrusion when the bilge pump system failed. (Doc. # 33 at 6; Doc. # 39). It is undisputed for the purposes of summary judgment that the bilge pump system failed due to a blown fuse. (Id.).

Kan-Do, Inc. sought insurance benefits from Great Lakes pursuant to an all risk insurance policy. (Doc. # 33-5 at 2). Great Lakes denied coverage and, on December 27, 2012,

filed an action for declaratory judgment against Kan-Do, Inc. requesting, inter alia, that the Court find that Great Lakes did not have a duty to provide coverage. (Doc. # 1).

**A.   The Policy**

Among other provisions, the Policy states:

> **Coverage A, Hull, Machinery, Equipment and Dinghy**
> . . . [W]e provide coverage for accidental physical loss of, or accidental physical damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

(Doc. # 1-1 at 10). Exclusion "b" to "Coverage A" is for "Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life." (Id. at 11). Exclusion "r" to "Coverage A" is for "Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire." (Id. at 12).

One relevant warranty applicable to the Policy is that "[i]t is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement.

Breach of this warranty will void the insuring agreement from its inception." (<u>Id.</u> at 17). The Policy defines "seaworthy" as "fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the Scheduled Vessel to be seaworthy, it and its crew members must be reasonably proper and suitable for its intended use." (<u>Id.</u> at 9).

**B. <u>Maintenance of the Vessel</u>**

The owners of the Kan-Do have supplied evidence regarding the steps that were taken to ensure that the Kan-Do was properly maintained. Among other things, Guy Kunnen, "the brother of Laura Lyons who is the president of Kan-Do, Inc." filed a declaration stating that "for the year before the Kan-Do sank, I was the one who had the primary responsibility for overseeing the maintenance of the Kan-Do." (Kunnen Decl. Doc. # 40 at ¶¶ 2-3). He stated that on a weekly basis he checked on the Kan-Do by making sure that the shore power was plugged in so that the batteries which ran the boat's three bilge pumps would always maintain their charge; started the generators, motors, and air conditioner;

inspected the bilge compartments "to make sure the bilge was dry;" and tested the bilge pumps "to make sure that they were working." (Id. at ¶ 4).

Kunnen also explained that he utilized the services of Wayne Brown for repairs when needed and that "[i]f there was something that the Kan-Do needed, it was always taken care of.  Nothing was ever put off or not replaced." (Id. at ¶ 7).  He further stated, "The last time that I was at the Kan-Do before it sank was on October 22, 2012.  It was just before the boat was pulled out of the water for the insurance survey.  On that date, I checked [shore power, generators, motors, air conditioner, bilge compartments, bilge pumps] and [t]he bilge pumps were working that day." (Id. at ¶ 8).

The record also contains the deposition of Brown, who testified that he maintained the Kan-Do for fifteen years, and he provided many services to keep the vessel in good working order. (Brown Dep. Doc. # 36 at 7).  For instance, in 2010, he repaired the generator and bilge pumps, tested and ran the engines, and replaced a wire harness. (Id. at 8-11).  In 2011, he repaired a water leak, repaired the generator, replaced the transmission, replaced the water

-5-

pump, and replaced an air conditioner duct. (<u>Id.</u> at 12-16).
Prior to the Kan-Do sinking in 2012, Brown checked the
generator, replaced the impeller, and replaced a faulty
steering cylinder. (<u>Id.</u> at 16-17).

In addition, days before the Kan-Do sank, the vessel
was pulled out of the water and dry docked so that an
inspection could be undertaken and so that the bottom of the
vessel could be painted. (Carlevatti Dep. Doc. # 35 at 6).
The individuals who were involved "follow[ed] standard
procedure" including checking the hatches and checking for
leaks. (<u>Id.</u> at 9-10).  No problems were detected at that
time. (<u>Id.</u> at 10).

However, on November 5, 2012, the Kan-Do sank. (<u>Id.</u> at
11-12). Thereafter, Kan-Do, Inc. retained expert Dan Avoures
to determine the cause of the submersion. (Doc. # 39 at 2).
Avoures prepared a detailed report and came to the final
conclusion that:

> [A]n incursion of water from the port shaft
> stuffing box allowing water to accumulate in the
> bilges.  The failure of the main bilge pump to
> dewater the vessel because of a **blown fuse** allowed
> water to accumulate to the point that a bilge
> discharge through hull fitting submerged and
> allowed rapid incursion of water.

(<u>Id.</u> at 3)(emphasis added).

-6-

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When

-7-

a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>,

663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

III. **Analysis**

    A.   **Burden Shifting Standard for All Risk Policy**

The parties agree that the Policy is an all risk policy. "An all risk policy is one which provides coverage against all risks covering every loss that may happen except by the fraudulent acts of the insured." Lamadrid v. Nat'l Union Fire Ins. Co., No. 13-11416, 2014 U.S. App. LEXIS 9548, at *14 (11th Cir. May 22, 2014)(internal citations omitted). An all risk insurance policy "creates a special type of coverage that extends to risks not usually covered under other insurance; recovery under an all risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." Id. at *14-15.

To recover under an all risk marine insurance policy, the insured must first show that the loss occurred during the coverage period and that the contract encompasses the loss. Banco Nacional de Nicaragua v. Argonaut Ins. Co., 681 F.2d 1337, 1340 (11th Cir. 1982); Morrison Grain Co. v.

Utica Mut. Ins. Co., 446 F. Supp. 414, 429 (M.D. Fla. 1977).
The Policy states that Great Lakes will provide coverage for
"accidental physical loss of, or accidental physical damage
to the Scheduled Vessel." (Doc. # 1-1 at 10).  Although the
Policy contains a plethora of defined terms, it does not
define "accident" or "accidental."

The Eleventh Circuit has explained that marine all risk
insurance contracts that refer to an accident or accidental
losses are governed by the fortuity doctrine. See Lamadrid,
2014 U.S. App. LEXIS 9548, at *17 (a "fortuitous event" is
defined as: "an event which so far as the parties to the
contract are aware, is dependent on chance.  It may be
beyond the power of any human being to bring the event to
pass; it may be within the control of third persons; it may
even be a past event, as the loss of a vessel, provided that
the fact is unknown to the parties.")(internal citations
omitted).

However, as stated in International Ship Repair &
Marine Services v. St. Paul Fire & Marine Insurance Company,
944 F. Supp. 886, 892 (M.D. Fla. 1996):

> [A] loss is not considered fortuitous if it
> results from an inherent defect in the object
> damaged, from ordinary wear and tear, or from the
> intentional misconduct of the insured. . . .

-10-

> [F]ortuitous events are accidents or casualties of
> the seas, unforseen and unexpected events, and are
> not losses occasioned by the incursion of water
> into a vessel's hull owing to the defective,
> deteriorated or decayed condition of the hull or
> ordinary wear and tear.

Id. (internal citations omitted). The Eleventh Circuit has underscored that "the burden of demonstrating fortuity is not a particularly onerous one." Lamadrid, 2014 U.S. App. LEXIS 9548, at *16-17.

If the insured establishes fortuity, the burden then shifts to the insurer to prove that an exclusion in the contract applies. Hollywood Flying Serv., Inc. v. Compass Ins. Co., 597 F.2d 507, 508 (11th Cir. 1979); Great Lakes Reinsurance (UK) PLC v. Soveral, No. 05-80923, 2007 U.S. Dist. LEXIS 13261, at *7 (S.D. Fla. Feb. 27, 2007).

### B.  **Was there an Accident or Fortuitous Event?**

Great Lakes asserts that it is entitled to summary judgment on the issue of insurance coverage because Kan-Do, Inc. has not shown that an accident or fortuitous event caused the loss.  In support of its argument that "absolutely nothing of an accidental nature has been shown to have taken place," Great Lakes primarily relies upon two cases: Miller Marine Services, Inc. v. Travelers Property Casualty Insurance Co., No. 04-cv-5679, 2005 U.S. Dist.

LEXIS 39906 (E.D.N.Y. Sept. 19, 2005) and <u>Great Lakes</u>
<u>Reinsurance (UK) PLC v. Soveral</u>, No. 05-80923, 2007 U.S.
Dist. LEXIS 13261 (S.D. Fla. Feb. 27, 2007).

Both cases involved vessels which sank at the dock in
which insurance coverage was denied.  In <u>Miller</u>, the court
determined that the insurance policy was not an "all risk
policy" and was rather a "named perils policy." 2005 U.S.
Dist. LEXIS 39906, at *15.  There, the insurer was not
required to cover the loss because the evidence showed that
the vessel sank due to vandalism perpetrated by two
disgruntled employees of the vessel's owner.  Specifically,
the vessel sank when "five valves" were left open, allowing
water to flood the engine compartment and crew quarters. <u>Id.</u>
at *6.  Therefore, the <u>Miller</u> case is inapposite because it
did not involve an all risk insurance policy and because the
parties agreed that the vessel sank due to an affirmative
act of vandalism.

The factual scenario in <u>Soveral</u>, is somewhat more
similar to that which has been presented here, but it is
nevertheless distinguishable.  In <u>Soveral</u>, the vessel was
insured pursuant to "an all-risk policy that covered all
accidental losses" and the vessel sank while tied to a dock

-12-

behind the boat owner's home in the Bahamas. 2007 U.S. Dist. LEXIS 13261, at *5.   The evidence showed that the vessel was not sheltered from the elements and was not hooked up to any shore power. Id. at *9.   Thus, during the rainy season, the battery-operated bilge pumps eventually stopped pumping when the batteries died, allowing the boat to succumb to the sea.  Id. The court framed the issue as follows:

> [T]he question here is whether the bilge pumps failure, due to dead batteries, constitutes an accidental loss.  This Court holds that it is not an accidental loss.  The evidence shows that the boat was left completely uncovered in the Bahamas, a tropical locale, during the rainy season.  The reason the boat sunk was because water entered the boat and the bilge pumps eventually drained the battery. Once the battery died, the bilge pumps stopped removing the water and the boat sunk. Batteries do not last forever. . . .  The deterioration of a battery constitutes normal wear and tear and is not fortuitous.   Moreover, this Court does not find that water entering into an uncovered vessel during rainy season is fortuitous.

Id. at *8-9.

Great Lakes has agreed that the Kan-Do sank due to a blown fuse, which cut off power to the bilge pumps.  This situation is not analogous to facts that transpired in Miller, in which disgruntled vandals purposely left valves open causing the vessel to sink.   In addition, while a comparison can be drawn between the dead batteries in

_Soveral_ and the blown fuse in this case, the factual circumstances in _Soveral_ are nevertheless distinguishable. The Kan-Do was hooked up to shore power to ensure that electrical charge was supplied to all necessary equipment, including the bilge pumps, whereas the vessel in _Soveral_ was not connected to any external power supply and was left unsheltered during the rainy season in the Bahamas. Unlike a blown fuse, which may be considered an unpredictable occurrence, it is almost an inevitability that an unsheltered vessel left in the tropics during the rainy season will be filled with rainwater and will sink, if its battery operated bilge pumps are unconnected to shore power.

The burden to show that a loss was fortuitous is not a heavy one. _Lamadrid_, 2014 U.S. App. LEXIS 9548, at *16-17. As noted by Kan-Do, Inc., "[n]o one knows when the fuse blew or why it blew. This is consistent with an accident or a fortuitous event that is sudden, unexpected and unforeseen. There are various possibilities for what caused the bilge pump's fuse to blow . . . but this does not change the accidental and fortuitous nature of the event." (Doc. # 42 at 11). There is a genuine issue of material fact regarding whether the Kan-Do sank due to an accidental or fortuitous

-14-

occurrence.    The  Court  accordingly  denies  Great  Lakes'
Motion  for  Summary  Judgment  to  the  extent  it  is  based  on  the
argument  that  no  accident  has  occurred.

   **C.   Was the Kan-Do Seaworthy?**

   Great  Lakes  also  asserts  that  it  is  entitled  to  summary
judgment  because  the  Kan-Do  was  not  seaworthy.     As
previously  noted,  the  Kan-Do  warrantied  that  it  was
seaworthy  and  agreed  that  "Breach  of  th[e]  warranty  [of
seaworthiness]  will  void  the  insuring  agreement  from  its
inception."  (Doc.  #  1-1  at  17).     "The  Standard  [for
seaworthiness]  is  not  perfection,  but  reasonable  fitness;
not  a  ship  that  will  weather  every  conceivable  storm  or
withstand  every  imaginable  peril  of  the  sea,  but  a  vessel
reasonably  suitable  for  her  intended  service."  Italia
Societa per Azioni di Navigazione v. Oregon Stevedoring Co.,
376  U.S.  315,  322  (1964).

   There  is  a  rebuttable  inference  of  unseaworthiness  upon
a  vessel  sinking  while  moored  to  the  dock  in  calm  waters.
Reisman v. N.H. Fire Ins. Co., 312  F.2d  17,  20  (5th  Cir.
1963).  If  the  vessel's  owner  produces  evidence  to  the
contrary,  the  burden  shifts  back  to  the  insurer.  Id.   The
Court  applies  the  inference  of  unseaworthiness  in  this  case

because the Kan-Do sank in calm waters while moored at its berth. However, Kan-Do, Inc. has rebutted the presumption and created a genuine dispute of material fact regarding seaworthiness because it has supplied copious evidence regarding the manner in which the vessel was maintained.

In addition to keeping the vessel at a marina hooked up to shore power, Kunnen provided a declaration in which he stated that he frequently checked the Kan-Do's engines, generator, bilge, and other systems. (Kunnen Decl. Doc. # 40 at ¶¶ 2-4). Furthermore, just days before the Kan-Do sunk, the Kan-Do was subject to a marine inspection and was painted. (Carlevatti Dep. Doc. # 35 at 6). See Markel Am. Ins. Co. v. Olsen, No. 10-11667, 2013 U.S. Dist. LEXIS 75750, at *26-27 (E.D. Mich. May 30, 2013)(finding that shipowners "provided evidence to rebut the presumption of unseaworthiness resulting from the [vessel] sinking in calm waters" with testimony that "Defendant is a meticulous and knowledgeable boat-owner who spent significant time and resources maintaining the [vessel].").

Pointing to Axis Reinsurance Co. v. Resmondo, No. 8:08-cv-569-T-33TBM, 2009 U.S. Dist. LEXIS 122778 (M.D. Fla. May 8, 2009)(report and recommendation), Great Lakes asserts

-16-

that "a vessel is unseaworthy and in breach of the express policy warranty where its bilge pumps are missing or fail to function." (Doc. # 43 at 5).   However, the facts of <u>Axis Reinsurance</u> reveal that the vessel sank when its owner, a novice boater who experienced engine trouble (including "popping noises" and overheating) on his first voyage, left the vessel at "an unmanned marina where he tied it to the dock and left it with a note" and "did not connect the vessel to electrical shore power."  <u>Id.</u> at *3.  With water leaking into the vessel due to a crack in the exterior of the vessel, "the bilge pump removed water from the vessel until the vessel's battery was exhausted and then it quit. Thereafter, the vessel continued to flood and then it sank." <u>Id.</u> at *6.

In <u>Axis Reinsurance</u>, the evidence revealed that the vessel sustained significant damage from running aground prior to the issuance of the insurance policy in question, and sank within days of the policy being issued. <u>Id.</u> at *5-6.  Similar evidence of unseaworthiness has not been established here.  Furthermore, Kan-Do, Inc.'s expert has opined that "[t]he bottom of the vessel appears to be sound and in good general maintenance and condition." (Doc. # 39

at 2).[1]  In the present case, genuine issues of fact remain for resolution during trial regarding whether the Kan-Do complied with all warranties of the Policy, including the warranty of seaworthiness.

### D.   <u>"Engines, Mechanical and Electrical Parts"</u>

Great Lakes points out that Exclusion "r" excludes coverage for the Kan-Do's "engines, mechanical and electrical parts" unless those parts are damaged by "an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire." (Doc. # 1-1 at 12).  Great Lakes asserts that it is entitled to summary judgment on the issue of coverage for the Kan-Do's engines, mechanical and electrical parts because the record does not support that these parts were damaged by "an accidental external force" as described in the Policy. (<u>Id.</u>).

Kan-Do, Inc. asserts that the language in Exclusion "r" is "inconsistent with the other language in Great Lakes' own

---

[1] With respect to Avoures' report, Great Lakes indicates: "For purposes of the instant summary judgment motion, the undersigned counsel for the Plaintiff will concede and in fact will gladly ***stipulate*** to everything asserted in the report prepared by Defendant's own expert witness." (Doc. # 33 at 6)(emphasis in original).

-18-

'all risk' policy with coverage for accident[al] physical loss of or damage to a scheduled vessel." (Doc. # 42 at 19). Kan-Do, Inc. further contends that "any ambiguity should be held against the drafter, namely Great Lakes." (Id.)(citing Fireman's Fund, Inc. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1003 (11th Cir. 2001)("We examine the language of the policy in its entirety, construing any ambiguity against the insurer.")).

The Court is persuaded by Kan-Do, Inc.'s argument and determines that the provisions in "Coverage A" and Exclusion "r" are ambiguous and potentially inconsistent. "Ambiguity exists in an insurance policy when its terms make the contract susceptible to different reasonable interpretations, one resulting in coverage and one resulting in exclusion." Id.

While the Policy covers accidental damage to the "hull, machinery, and equipment," in coverage A, it excludes damage to "engines, mechanical, and electrical parts" unless that damage was sustained by an "accidental external event." (Doc. # 1-1 at 10, 12). None of these operative terms are included in the "definitions" section of the Policy, and it appears that, giving these terms their plain and ordinary

-19-

meaning, many of the same parts of the Kan-Do (for instance, the "mechanical parts" and "machinery" and "equipment") could reasonably fall under either Coverage A or Exclusion "r," thus creating an ambiguity.  This ambiguity must be construed against Great Lakes, and the Court accordingly denies the Motion for Summary Judgment as to Exclusion "r."

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

Plaintiff Great Lakes Reinsurance (UK) PLC's Motion for Summary Judgment (Doc. # 27) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>16th</u> day of June, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

–20–